**The PEOPLE of the State of Colorado, Complainant,**

v.

**Larry G. GOLDEN, Attorney-Respondent.**

**No. 82SA350.**

Supreme Court of Colorado, En Banc.

Dec. 13, 1982.

Linda Donnelly, Disciplinary Prosecutor, George S. Meyer, Deputy Disciplinary Prosecutor, Denver, for complainant.

Larry G. Golden, pro se.

HODGES, Chief Justice.

Three formal complaints involving many allegations of misconduct by respondent-attorney, Larry G. Golden, were filed with the Grievance Committee of the Supreme Court. Because of the serious nature of the complaints, the respondent's license to practice law in Colorado was suspended by this Court on May 15, 1981, pending the outcome of the hearings on the complaints.

The complaints with citations were properly served on the respondent and all notices, motions, and orders entered prior to hearings were served on him. Although answers and other responses were filed by the respondent, he failed to appear at the formal hearings.

Numerous witnesses testified at the formal hearings and documentary evidence was presented. The hearing committee of the Grievance Committee at the conclusion of the hearings submitted its report, which states that its findings of fact were estab-

lished by clear and convincing evidence. Based upon the many findings of fact showing a pattern of numerous and consistent violations of Colorado Supreme Court Rules and the Code of Professional Responsibility, it was recommended that the respondent be disbarred. We agree, and accordingly enter our order of disbarment of the respondent.

The evidence presented at the hearings showed that respondent, who was admitted to practice law in Colorado in May 1977, operated a "store front" law practice under the name of Golden Law Group. At one time he had a total of ten offices in operation and hired various attorneys to perform the legal work. Most of the respondent's time was devoted to administering his law practice, which included the billing of clients. He had very little actual contact with any clients.

The 68 findings of fact in the report of the Grievance Committee give a detailed account of the manner in which the affairs of 20 clients were handled. We see no purpose in extending the length of this opinion by a complete description of each of these clients' allegations of misconduct which were established by clear and convincing evidence. The findings of fact and resultant violations will therefore be summarized.

Two clients, a husband and wife, paid $5,500 to respondent for placement in an escrow account. When money was released from the account for payment of certain expenses, the clients were to be notified. The respondent failed to adhere to this agreed procedure, and sometime later sent the clients a bill disclosing that all the money had been applied to legal fees. Thereafter, when the clients attempted to contact respondent they discovered he had closed his law offices. No notification of this was ever received by these clients. The evidence also showed that only one of the attorneys employed by respondent did any work on the clients' case, and he billed his time at $1,000. These clients employed other counsel who, after several months, was able to gain possession of their file.

Although the amounts of money involved in the complaints of other clients is not as substantial as in the situation described above, the same methods of overbilling, overcharging, and failure to carry out the contracts of employment with clients are demonstrated by the respondent in the conduct of his law practice. A typical example involves a wife who contacted one of the respondent's law offices in response to an ad indicating a $200 fee for a dissolution of marriage. The husband could never be served and only initial documents were prepared which involved about two hours of an attorney's time. Nonetheless, about a year later respondent filed a $500 attorney's fee lien against the real estate owned by this client without any notification to her.

In a bankruptcy matter a client paid the respondent's law office $700. Respondent sometime later requested an additional $200 before the commencement of any bankruptcy proceeding. Thereafter, respondent closed his law offices. The findings of fact state that the fees collected in this matter were excessive, and the respondent's failure to file a bankruptcy petition for his client was unjustified.

In addition to the findings of fact relating to the complaints of clients, it was also found that in motions to withdraw from a client's case, the respondent characteristically misrepresented facts to the trial court. Also, it was found that respondent's mismanagement of his law offices involved failure to keep accurate financial records of clients' accounts, although this did not prevent him from billing precise amounts. Also, in several instances it was found that the respondent failed to perform his agreements with the attorneys he hired with reference to compensation and expenses. This and other questionable personnel practices caused the rapid turnover in clerical and professional employees. Eleven attorneys either quit or were terminated by respondent in the eight-month period prior to February 1980.

At various times the respondent submitted financial statements to several banks. It was found that in each instance

an intentional overstatement of assets and an understatement of liabilities resulted in a gross distortion of net worth. There is no indication from the evidence as revealed from the findings of fact whether any bank acted to its prejudice in reliance upon these statements.

The report of the Grievance Committee concludes that respondent's conduct violates C.R.C.P. 241(B) relating to discipline of attorneys, and the Code of Professional Responsibility which prohibits:

"(1) Conduct involving dishonesty, fraud, deceit, or misrepresentation, DR 1–102(A)(4);

(2) Failure to carry out a contract of employment with a client, DR 7–101(A)(2);

(3) Failure to refund fees to a client, DR 9–102(B)(4);

(4) Engaging in conduct prejudicial to the administration of justice, DR 1–102(A)(5);

(5) The charging or collecting of an excessive fee, DR 2–106(A), and;

(6) Neglect of a legal matter, DR 6–101(A)(3)."

We regard this conduct of the respondent to be reprehensible. It illustrates the respondent's complete lack of comprehension of the high responsibilities of an attorney to his clients, to his associates, to the legal profession, and to the general public. An attorney must adhere with dedication to the highest standards of honesty and integrity in order that members of the public are assured that they may deal with attorneys with the knowledge that their matters will be handled with absolute propriety.

The respondent, Larry G. Golden, is hereby disbarred.

He is further ordered to pay the costs of the Grievance Committee in conducting these proceedings in the amount of $2,358.39. These costs are payable within 90 days to the Grievance Committee, 190 East 9th Avenue, Suite 440, Denver, Colorado 80203.